# UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
### TAMPA DIVISION

MICHAEL A. LORUSSO, ON HIS OWN
BEHALF AND OTHERS SIMILARLY
SITUATED,

        Plaintiff,

                                          Case No. 8:14-cv-00822-EAK-TGW

v.

SUN HOLDINGS, LLC, AND
SUN STEAKS, LLC,

        Defendants.

_____

## DEFENDANTS' MOTION AND MEMORANDUM OF LAW TO COMPEL ARBITRATION AND STAY THE PROCEEDINGS

Defendants, Sun Holdings, LLC[1] and Sun Steaks, LLC (collectively, "Sun Steaks"), by and through undersigned counsel, hereby move this Court to compel arbitration and to stay the proceedings.

## SUMMARY OF THE ARGUMENT

Plaintiff, Michael Lorusso ("Plaintiff"), a former employee, on his own (and on behalf of others similarly situated) claims Sun Steaks violated the Fair Labor Standards Act ("FLSA")[2] through their failure to pay him (and those similarly situated) all earned wages. (D.E. 7). Specifically, Plaintiff contends that Sun Steaks violated the FLSA's and Florida law's minimum wage provisions and the FLSA' overtime requirements by requiring him (and those similarly situated) to work off the clock. *Id.* at ¶¶8, 12. As a result, Plaintiff claims that Sun Steaks paid

---

[1] Defendant, Sun Holdings, LLC, is not a property party in these proceedings in that it was not an "employer" as defined under the Fair Labor Standards Act.

[2] Plaintiff loosely refers to a violation of "Florida law", but the Amended Complaint only seeks relief under the FLSA. (D.E. 7).

their non-exempt employees less than the minimum wage and failed to pay non-exempt employees overtime compensation for hours worked in excess of forty hours per week in violation of the FLSA. (*Id.*).

Plaintiff, and any of the purported opt-ins[3], are precluded from litigating their claims in this Court because they are all parties to binding arbitration agreements. These agreements unequivocally require the parties to arbitrate the wage disputes asserted in this cause. Therefore, arbitration should be compelled in accordance with the binding arbitration agreements executed by Plaintiff and the purported opt-ins. Additionally, Sun Steaks requests that this Court stay the entire case while the parties arbitrate the wage claims. *See* 9 U.S.C. §§ 3-4.

## I.     PROCEDURAL HISTORY

1.     Plaintiff, who also goes by the name Michael Anthony Whitney, was employed as an hourly wait staff employee by Sun Steaks at Store 2410 from October 19, 2011 until his termination, effective February 4, 2014.

2.     On April 8, 2014, Plaintiff filed his initial Complaint for wage violations under the FLSA against Sun Holdings, LLC. (D.E. 1).

3.     Before an answer or responsive pleading was filed, Plaintiff amended the complaint on June 19, 2014 to include his employer, Sun Steaks, LLC. (D.E. 7).

4.     Defendants then answered the Amended Complaint on July 2, 2014. (D.E. 8).

5.     A Case Management and Scheduling Order was entered on August 6, 2014 (largely based on the parties' proposed deadlines from the Case Management Report). (D.E. 13). The relevant deadlines include the trial date of April, 2016, a discovery cut-off of September 28, 2015, dispositive motion deadline of October 16, 2015 and expert report reports due between

---

[3] Sun Steaks does not take a position in this Motion as to whether, or not, the consents to join and opt-in this litigation are legally or factually sufficient.

June 29, 2015 and July 27, 2015.

6.       On September 3, and 4, 2014, Plaintiff filed two notices of consents to join by Selina Waltson and Christopher Karpoicz.  (D.E. 17, 18).   One day later, Plaintiff filed his Motion For Conditional Certification and Facilitation of Court-Authorized Notice ("Motion to Certify").  (D.E. 19).   In the aforesaid Motion, Plaintiff attempts to facilitate notice to "all hourly-paid laborers" who worked at a number of Sun Steaks' facilities and who (1) worked more than 40 hours weekly; (2) were not paid overtime compensation for all hours worked and (3) who were directed to work off the clock by Sun Steaks.  (D.E. at p. 2).

7.       Plaintiff has just recently filed four opt-in notices for Ryan Fritzsch, JoAnn Ganno, Jessica Polski and Rodolfo Veliz.  (D.E. 34, 35, 36, 40).

8.       Other than the Motion to Certify, no substantive motions have been filed in this case.  (*See* Dkt. Report).  In fact, as the Docket Report reflects, minimal activity has occurred in this case and the only approaching deadline is to complete mediation by November 21, 2014. (D.E. 37).

9.       Likewise, minimal discovery has occurred.   Neither Plaintiff, nor any of the purported opt-ins, have been deposed. And Plaintiff has only taken one deposition (Sun Steaks' corporate representative) and served some discovery requests that were responded to by Defendants.   While Defendants served initial discovery requests to Plaintiff, the responses are long over-due and Plaintiff has not objected or responded.

## II.       STATEMENT OF FACTS

1.       Sun Steaks requires its hourly paid employees (*i.e.* Plaintiff and those that have opted into this matter) as a term and condition of employment to agree to arbitration of certain employment and wage related claims.  (*See* Ex. A, Graf Dec. Ex. Nos. 2, 3, 5, 7, 8, 9, 10, and 12).

2.     Plaintiff, and each of those for which notices of consent to opt-into this litigation have been filed, Selina Waltson, Christopher Karpoicz, Ryan Fritzsch, JoAnn Gano and Jessica Polski ("opt-ins"), all agreed to binding arbitration as the sole means for resolving covered employment related disputes of the type alleged here.  (*See Graf Dec. Ex. Nos. 2, 3, 5, 7, 8, 9, 10 and 12*).

3.     The arbitration agreements at issue provide, in relevant part, as follows:

## MUTUAL AGREEMENT TO ARBITRATE

If Employee receives a copy of this Agreement prior to commencing work at Company [defined as Sunny Corral Management, LLC, and its affiliated or related companies of the entities and/or persons, other than the employee at issue, whose alleged act or omission was the cause of any "Covered Claim"], Employee's commencement of work at Company shall constitute acceptance of the terms and conditions of this Agreement regardless of whether or not Employee signs this document and shall be the Effective Date of this Agreement. For any other Employee, the Effective Date of this Agreement shall occur ten (10) calendar days after Employee receives notice of the terms and conditions of this Agreement and employee continues to work for Company which shall indicate conclusively that he or she accepts the terms and conditions of this Agreement.

For Employees who commence or continue employment at Company as of their respective Effective Date, Company and Employee mutually agree to resolve Covered Claims [defined as "any and all claims included or described in paragraph 5(a) of this Agreement) which occur on or after the Effective Date according to the terms and conditions of this Agreement. ….

3.     Federal Arbitration Act Applies …

The FAA [The Federal Arbitration Act] governs all aspects of this Agreement.

4.     **ARBITRATION IS MANDATORY FOR EMPLOYEES**

**COVERED CLAIMS SHALL BE EXCLUSIVELY RESOLVED BY BINDING ARBITRATION.  WHILE BOTH EMPLOYEE AND COMPANY RETAIN ALL SUBSTANTIVE LEGAL RIGHTS AND REMEDIES UNDER THIS AGREEMENT, EMPLOYEE AND COMPANY ARE BOTH WAIVING ALL RIGHTS WHICH EITHER MAY HAVE WITH REGARD TO TRIAL, WHETHER JURY OR NON-JURY, IN STATE OR FEDERAL COURT FOR ANY COVERED CLAIM.**

**EMPLOYEE AND COMPANY ALSO AGREE TO WAIVE ANY RIGHT THEY MAY HAVE TO CLASS ARBITRATION OR CONSOLIDATION OF INDIVIDUAL ARBITRATIONS FOR ANY AND ALL COVERED CLAIMS. THE DECISION OF THE ARBITRATION JUDGE OR FIRM IS FINAL AND BINDING ON ALL OF THE PARTIES. THERE IS NO RIGHT OF APPEAL ON THE MERITS OF THE DIPSUTE TO EITHER A STATE OR FEDERAL COURT.**

5.　　　Scope of Arbitration Agreement

a.　　　Claims Covered by this Agreement

This Agreement is mutual, covering all the claims that Company or Employee may have which arise from: …

(ii).　　　Any and all claims or controversies concerning or relating to Employee's application with, employment with, or termination from, the Company, including but not limited to, claims for standard wages, overtime wages, or other compensation or benefits due; … and/or claims for violation of any federal or state statute or common law or regulation.

6.　　　Procedure

a.　　　Who Shall Arbitrate?

All arbitrations under this Agreement shall be administered by Judicial Workplace Arbitration, Inc. under its rules for the resolution of disputes, and if not available, then the American Arbitration Association ("AAA") and its rules. …..

c.　　　Payment of Fees

Company shall be responsible for the arbitrator's fee.

d.　　　Discovery and pre-Arbitration Motions

All parties are entitled to pre-arbitration discovery under the Florida Rules of Civil Procedure. The same discovery devices and scope of discovery as set forth in those rules apply. All parties are entitled to file any motions, including dispositive motions, set forth in the Florida Rules of Civil Procedure.

e.　　　Remedies and Defenses

All parties are entitled to allege any claim, obtain any remedy and assert any legal or equitable defense that the party could allege, obtain or assert in an Florida state or federal court, including any limitation of

action defense the running of which shall be not tolled or abated as a result of the filing and prosecution of any Covered Claim. …

7.      Consideration

In addition to any other consideration that may exist for this Agreement, each party's mutual promise to resolve claims and controversies by arbitration in accordance with the provisions of this Agreement constitutes consideration for this Agreement.  Likewise, Employee's continued employment with Company after receiving notice of the institution of the Agreement will also constitute consideration for this Agreement.

(*See Graf Dec. Ex. Nos. 2, 3, 5, 7, 8-10, 12 and 14; pgs 2-5 of agreements*).

4.      Plaintiffs and the opt-ins, all of whom were at-will employees, agreed to the terms of the Arbitration Agreements.  In fact, each of them signed an Arbitration Agreement upon inception of their employment.  (See Graf Dec. Ex. Nos. 2, 3, 5, 7, 8-10, 12 and 14).

5.      Additionally, they all executed a "Receipt of Employment Documents" wherein they acknowledged having received and reviewed a number of documents, including the "Arbitration Agreement".  (*See Graf Dec. Ex. Nos. 1, 4, 6, 9, 11 and 13*).

6.      Plaintiff and the opt-ins thereafter continued their employment with Sun Steaks after receiving and signing the Arbitration Agreements.  (*See Graf. Dec. Ex. Nos. 2, 3, 5, 7, 8-10, 12 and 14*).

7.       Because the wage claims as set forth in the Amended Complaint are subject to binding arbitration, as set forth in the Arbitration Agreements, Plaintiffs and the opt-ins are bound to arbitrate before a neutral arbitrator.

## MEMORANDUM OF LAW

### A.      The Court Should Compel Arbitration and Stay Plaintiff's Claims

The wage claims asserted in the Amended Complaint must be adjudicated in arbitration. Pursuant to Sections 3 and 4 of the FAA, the Court should stay all further proceedings on

Plaintiff's claims and compel him and the opt-ins to pursue their claims through arbitration. Courts must stay proceedings pending arbitration when the action involves any issue "referable to arbitration under an agreement in writing for such arbitration." 9 U.S.C. § 3. Courts must also compel arbitration where any party is "aggrieved by the alleged failure, neglect, or refusal of another to arbitrate under a written agreement for arbitration." *Id.* at § 4. As further discussed below, the Arbitration Agreements between Plaintiff, the opt-ins and Sun Steaks are valid, enforceable and expressly cover the wage claims at issue in this action. The Court should therefore enter an order staying the proceedings and compelling arbitration.

### 1. The Federal Arbitration Act Applies

 "[A]ny doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration." *Moses H. Cone Mem. Hosp.*, 460 U.S. at 24-25 (holding that the FAA provisions indicate a "liberal federal policy favoring arbitration agreements"); *S&H Contractors, Inc. v. A.J. Taft Coal Co., Inc.*, 906 F. 2d 1507, 1514 (11th Cir. 1990) (noting the "strong policy" in favor of arbitration).

The FAA states that "[a] written provision in any . . . contract evidencing a transaction involving commerce to settle by arbitration a controversy thereafter arising out of such contract or transaction . . . shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract." 9 U.S.C. § 2 (2013). This language reflects a "liberal federal policy" favoring arbitration. *AT&T Mobility v. Concepcion*, 131 S. Ct. 1740, 1745 (2011) (citing *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24 (1983)). Accordingly, if an arbitration agreement, including an employment arbitration agreement, falls under the FAA, courts must enforce its terms as they would any other contract. *See Circuit City Stores, Inc. v. Adams*, 532 U.S. 105, 119 (2001); *Volt Info. Scis., Inc. v. Bd. of Trs. of Leland Stanford Univ.*, 489 U.S. 468, 478-79 (1989).

The FAA applies to the Arbitration Agreements at issue. Sun Steaks owns and operates restaurants through various subsidiaries and in different states; as such, Sun Steaks' national operations and employment practices implicate matters of interstate commerce; thus, the subject Arbitration Agreement(s) signed by Plaintiff, and the opt-ins, is a "contract evidencing a transaction involving commerce" sufficient to trigger application of the FAA. See 9 U.S.C. § 2. Further, the Arbitration Agreement specifically states that it is governed by the FAA. For these reasons, the Court should examine the Arbitration Agreement as it would any other contract and apply Sections 3 and 4 of the FAA.

The Court Should Stay Proceedings Under Section 3 of the FAA.

Section 3 of the FAA provides:

> If any suit or proceeding be brought in any of the courts of the United States upon any issue referable to arbitration under an agreement in writing for such arbitration, the court in which such suit is pending, upon being satisfied that the issue involved in such suit or proceeding is referable to arbitration under such an agreement, shall on application of one of the parties stay the trial of the action until such arbitration has been had in accordance with the terms of the agreement, providing the applicant for the stay is not in default in proceeding with such arbitration.

9 U.S.C. § 3.

A stay of arbitrable claims is mandatory: "By its terms, the Act leaves no place for the exercise of discretion by a district court, but instead *mandates* that district courts shall direct the parties to proceed to arbitration on issues as to which an arbitration agreement has been signed." *Dean Witter Reynolds Inc. v. Byrd*, 470 U.S. 213, 218 (1985) (citing 9 U.S.C. §§ 3, 4) (emphasis added); *see also Klay v. Pacificare Health Sys.*, 389 F.3d 1191, 1203-04 (11th Cir. 2004) ("For arbitrable issues, the language of Section 3 indicates that the stay is mandatory.")

Before entering a stay under Section 3, however, the Court must determine that: (1) a valid agreement to arbitrate exists; and (2) the particular dispute falls within the scope of the agreement. *Howsam v. Dean Witter Reynolds, Inc.*, 537 U.S. 79, 84 (2002); *EEOC v. Waffle House, Inc.*, 534 U.S. 279, 289 (2002). The Court must also consider whether the right to arbitrate has been waived. *S&H Contractors,* 906 F. 2d at 1514. An order to arbitrate is appropriate here because Plaintiff and the opt-ins entered into valid Arbitration Agreements and the allegations in the Amended Complaint fall squarely within the scope of those agreements.

### a. The Plaintiff and Opt-Ins Entered Into Valid Arbitration Agreements.

To determine whether parties entered into a valid and enforceable agreement to arbitrate disputes relating to their employment, the subject agreement must be examined under state contract formation law. *See Perry v. Thomas*, 482 U.S. 483, 492 n.9 (1987) ("state law . . . concerning the validity, revocability, and enforceability of contracts" governs whether an arbitration clause is a contract under the FAA). The events surrounding the formation and execution of the Arbitration Agreements arose in Florida.

Whether the parties agreed to arbitrate a dispute is governed by ordinary contract principles derived from Florida's substantive law from. *See Mastrobuono v. Shearson Lehman Hutton, Inc.*, 514 U.S. 52, 62-63 & n. 9 (1995) ("When deciding whether the parties agreed to arbitrate a certain matter (including arbitrability), courts generally . . . should apply ordinary state-law principles that govern the formation of contracts."). In Florida, a binding contract exists when there is some combination of mutual assent (*i.e.* offer and acceptance), consideration, and certain and definite terms. *See Office Pavilion S. Fla., Inc. v. ASAL Prod., Inc.*, 849 So.2d 367, 370 (Fla. 4th DCA 2003) (binding contract exists when the parties have mutually assented "to a certain and definite proposition" and the parties' agreement is supported

by consideration).  The Arbitration Agreement meets the requirements of Florida's substantive contract law; thus, it is valid and enforceable.

**b.      Signed Agreements and Continued Employment Evidence the Parties' Mutual Assent.**

The Arbitration Agreement sets forth clear and definite terms, and the essential terms were communicated in writing to Plaintiff and the opt-ins.  Specifically, the parties mutually agreed to resolve all "any and all claims or controversies concerning or relating to "Employee's … employment with … the Company, including … claims for standard wages, overtime wages, or other compensation ….. " Agreement 5(a)(ii). (*See Dec. Ex. Nos. 2, 3, 5, 7, 8-10, 12 and 14*). Plaintiff and the opt-ins unquestionably assented to the Arbitration Agreement as a condition of their employment.

While a signature is not necessarily required, however, for a showing of assent, Plaintiff and the opt-ins signed the agreements.  In any event, a party's continued employment after the employer announces an arbitration policy is deemed sufficient to demonstrate the required "acceptance" of that new term of employment.  *See Caley v. Gulfstream Aerospace, Corp.*, 428 F.3d 1359, 1369 (11th Cir. 2005) (nothing in the FAA suggests that a "written provision" had to be signed to be enforceable).; In the instant case, Plaintiff and the opt-ins continued their employment after becoming aware of, and signing, the Arbitration Agreements, which unequivocally demonstrates their acceptance of those agreements.

**c.      There is Consideration.**

The Arbitration Agreement states that Sun Steaks is equally bound to all of its provisions - "[t]his Agreement is mutual, covering all the claims that Company or Employee may have which arise from: … claims or controversies" relating to employee's employment and including wage claims.  (*See Dec. Ex. Nos. 2, 3, 5, 7, 8-10, 12 and 14*)  Under Florida law, this mutual

exchange of promises constitutes ample consideration to support the Arbitration Agreement. *See*

*Bhim v. Rent-A-Center, Inc.,* 655 F. Supp. 2d 1307, 1313 (S.D. Fla. 2009) ("[m]utually binding

promises to arbitrate provide consideration for one another, and give rise to an enforceable

arbitration agreement"). Moreover, continued employment provides consideration to enforce an

arbitration agreement. *See Bhim v. Rent-A-Center, Inc.,* 655 F. Supp. 2d 1307, 1313 (S.D. Fla.

2009).

> **d.      The Claims in the Third Amended Complaint are within the
> Scope of the Arbitration Agreement.**

The Amended Complaint contains one cause of action for alleged unpaid wage violations

under the FLSA and (less clear) for minimum wage violations under Florida law. (D.E. 7).

These claims derive from Plaintiff's, and the opt-ins, contention that Sun Steaks violated federal

law by allegedly requiring them to work off the clock and by not paying them for all overtime

wages and/or minimum wages earned. *Id.*

While these claims fall squarely within the parameters of the Arbitration Agreement (*See

Graf Dec. Ex. Nos. 2, 3, 5, 7, 8-10, 12 and 14*), 5(a)(ii), "all claims or controversies concerning

employee's employment with Sun Steaks, including claims for "standard wages, overtime wages,

or other compensation"), Plaintiff, and the opt-ins, bear the burden of proving that their claims

do not fall within the scope of the Arbitration Agreement. *See Green Tree Fin. Corp.-Ala. v.

Randolph*, 531 U.S. 79, 91 (2000) ("A party resisting arbitration bears the burden of proving that

the claims at issue are unsuitable for arbitration.") (internal citation omitted). To meet this

burden and overcome the strong policy of favoring arbitration, Plaintiff and the opt-ins face a

steep challenge. They must show "with positive assurance that the arbitration clause is not

susceptible of an interpretation that covers the asserted dispute." *United Steelworkers of Am. v.*

*Warrior and Gulf Navigation Co.*, 363 U.S. 574, 582-83 (1960). Plaintiff and the opt-ins cannot meet this difficult burden.

As set forth above, the Arbitration Agreement expressly covers employment-related claims or controversies, including those for overtime wages, standard wages as well as for disputes over compensation. (*See Graf Dec. Ex. Nos. 2, 3, 5, 7, 8-10, 12 and 14*), 5(a)(ii). Moreover, an employer and an employee can agree to arbitrate statutory claims, including claims for unpaid wages brought pursuant to the FLSA. *See Walthour v. Chipio Windshield Repair, LLC*, 745 F.3d 1326 (11th Cir. 2014); *Sutherland v. Ernest & Young LLP*, 726 F.3d 290, 296 (2d Cir. 2013); *Owen v. Bristol Care, Inc.*, 702 F.3d 1050, 1055 (8th Cir. 2013); *Vilches v. Traveler's Cos.*, 413 Fed. Appx. 487, 494 n.4, 2011 U.S. App. LEXIS 2551 (3d Cir. 2011); *Horenstein v. Mort. Mkt., Inc.*, 9 Fed. Appx. 618, 619, 2001 U.S. App. LEXIS 9267 (9th Cir. 2001); *Carter v. Countrywide Credit Indus. Inc.*, 362 F.3d 294, 298 (5th Cir. 2004); *Adkins v. LaborReady, Inc.*, 303 F.3d 496, 503 (4th Cir. 2002). Based on the plain language of the Arbitration Agreement, there is no dispute that Plaintiff, and the opt-ins, agreed to pursue their wage-and-hour claims on an individual basis exclusively through arbitration. (*See Graf. Dec. Ex. Nos. 2, 3, 5, 7, 8-10, 12 and 14*).

**2.      Plaintiff and the Opt-Ins Must Proceed to Arbitration on an Individual Basis.**

Sun Steaks did not agree or consent to class or collective arbitration. Quite to the contrary, the Arbitration Agreement executed by the parties expressly and patently states that: "**EMPLOYEE AND COMPANY ALSO AGREE TO WAIVE ANY RIGHT THEY MAY HAVE TO CLASS ARBITRATION OR CONSOLIDATION OF INDIVIDUAL ARBITRATIONS FOR ANY AND ALL COVERED CLAIMS**". (*See Graf. Dec. Ex. Nos. 2,*

*3, 5, 7, 8-10, 12 and 14; ¶4*).  This provision is enforceable and Plaintiff cannot unilaterally alter this agreement.

The Supreme Court, in fact, has confirmed that it is improper to force a party into a class proceeding to which it did not agree.  *Stolt-Nielson S.A. v. AnimalFeeds Int'l Corp.,* 130 S. Ct. 1758, 1775 (2010).  As such, "a party cannot be compelled under the FAA to submit to class arbitration unless there is a contractual basis for concluding that the party agreed to do so."  *Id*. Here, there is no contractual basis for concluding that Sun Steaks agreed to a class action or class arbitration.  Instead, the plain language of the Arbitration Agreement confirms the opposite – a class proceeding expressly prohibited.

3.    **The Court Must Compel Arbitration Under Section 4 of the Federal Arbitration Act.**

Section 4 of the FAA provides that "[a] party aggrieved by the alleged failure, neglect, or refusal of another to arbitrate under a written agreement for arbitration may petition any United States district court, which, save for such agreement, would have jurisdiction under Title 28" and request "an order directing that such arbitration proceed in the manner provided for in such agreement."  9 U.S.C. § 4.  Section 4 further provides: "The court shall hear the parties, and upon being satisfied that the making of the agreement for arbitration or the failure to comply therewith is not in issue, the court *shall* make an order directing the parties to proceed to arbitration in accordance with the terms of the agreement."  *Id.* (emphasis added).

In determining whether to compel arbitration under Section 4, courts consider the same factors discussed above for Section 3, as well as whether the opposing party failed, neglected, or refused to participate in arbitration following notice from the party invoking arbitration.  *See Rent-A-Center, W., Inc. v. Jackson,* 561 U.S. 63, 68 (2010).  Here, Plaintiff and the opt-ins' claims are subject to and referable to arbitration; and they have "failed, neglected, or refused to

participate" in the arbitration process. Thus, an order compelling arbitration is warranted. *See, e.g.*, *Kong v. Allied Prof'ls Ins. Co.*, 2008 U.S. Dist. LEXIS 65720 (M.D. Fla. July 22, 2008) (granting defendant's motion stay litigation and compel arbitration); *see also Kong v. Allied Prof'ls Ins. Co.*, 2008 U.S. Dist. LEXIS 65727, at *2-5 (M.D. Fla. July 22, 2008) (explaining that "this Court elects to follow the Fifth Circuit's interpretation" in which the court agreed that "district courts in Mississippi are empowered to compel arbitration outside this district").

### B. Sun Steaks has not Waived the Right to Arbitrate

There is a strong policy favoring arbitration, so "any party arguing waiver of arbitration bears a heavy burden." *Stone v. E.F. Hutton & Co., Inc.,* 898 F. 2d 1542, 1543 (11th Cir. 1990). To determine if a waiver has occurred, courts looks at two factors: (1) whether "under the totality of the circumstances" the party (*i.e.* Sun Steaks) has acted inconsistently with its arbitration right and (2) whether, by doing so, it has prejudiced the other party. *Ivax Corp. v. B. Braun of Am., Inc.*, 286 F. 3d 1309, 1315-16 (11th Cir. 2002). Neither factor is evidenced here.

As to the first factor, a waiver may occur when a party "substantially invokes the litigation machinery prior to demanding arbitration". *S&H Contractors,* 906 F. 2d at 1514. "The key is whether there has been substantial participation in the litigation "'to a point inconsistent with an intent to arbitrate'". *Harling v. Ado Staffing, Inc.,* 2014 WL 1410519 at *6 (M.D. Fla. Feb. 21, 2014) (report and recommendation) (citing and quoting *Morewitz v. W. of Eng. Ship Owners Mut. Prot. & Indem. Ass'n,* 62 F. 3d 1356, 1366 (11th Cir. 1995)). The mere failure to assert the right to arbitration at the outset of the litigation does not, in and of itself, establish a waiver of arbitration without a showing of substantial preparation. *Harling,* 2014 WL 1410519 at *6 (citing and quoting *Suntrust Bank v. Gill,* No. 8:10-CV-2619-T-17TBM, 2011 WL 2192825 at *2 (M.D. Fla. June 6, 2011)).

Substantial participation in litigation exists, for example, when there are long delays and extensive motion practice and/or sufficient engagement in the discovery process by the party that subsequently seeks arbitration. *See Harling,* 2014 WL 1410519 at *6 (collecting cases); *S&H Contractors*, 906 F. 2d at 1514 (finding an eight month delay in moving for arbitration, including interim activity of litigating two substantive motions and participating in five depositions, as actions inconsistent with the right to arbitrate); *Terry v. Laurel Oaks Behavioral Health Center, Inc.*, 1 F. Supp. 3d 1250, 1280-81 (M.D. Ala., Feb. 28, 2014) (moving party did not seek arbitration until more than a year after the commencement of the case, and after moving for summary judgment and engaging in an extensive ninth-month discovery period that resulted in four depositions).

In this case, Sun Steaks did not substantially participate in the litigation. The original Complaint was filed on April 8, 2014 (D.E. 1), however, before Sun Steaks' response was due, Plaintiff amended the Complaint on June 19, 2014. (D.E. 7). After filing the answer on July 2, 2014 (D.E. 8), the parties engaged in only minimal litigation. Specifically, Sun Steaks' actions included filing a substitution of counsel, fulfilling its obligations to confer and submit a case management report, the filing of required corporate disclosures, obtaining an extension to respond to Plaintiff's Motion for Conditional Class Certification, participating in noticing the mediation conference to meet the mediation deadline set forth in the Scheduling Order, and filing motions for further extensions to respond to the Motion to Certify and complete mediation. Sun Steaks also had to respond to Plaintiff's motion for fees and lost wages when the mediation was postponed. With respect to discovery, Sun Steaks responded to Plaintiff's discovery requests and only recently provided a corporate representative for the single deposition that was taken in this case. Notably, Sun Steaks has not deposed Plaintiff, or any of the opt-ins, and while Sun

Steaks served discovery requests to Plaintiff after the answering the Amended Complaint, responses or objections were never provided by Plaintiff. Nonetheless, Sun Steaks has not moved to compel the overdue responses. Additionally, Sun Steaks has not filed any substantive motions directed at Plaintiff's claims. Under these circumstances, Sun Steaks cannot be seen as substantially participating in the litigation process.

Even if this Court were to find substantial participation by Sun Steaks, there is no prejudice to Plaintiff, and the opt-ins by any delay in moving to compel arbitration. "When determining whether the other party has been prejudiced, [the court] may consider the length of delay in demanding arbitration and the expense incurred by that party from participating in the litigation process." *S&H Contractors*, 906 F. 2d at 1514. Prejudice exists in such situations where the party moving for arbitration "allows the opposing party to undergo the types of litigation expenses that arbitration was designed to alleviate." *Morewitz,* 62 F. 3d at 1366.

Here, any delay was *de minimus*. The Amended Complaint, which added co-defendant, Sun Steaks, LLC, was filed less than five months ago and before any responsive pleading. Additionally, Plaintiff has not endured much in the way of litigation expenses that would not otherwise have occurred in arbitration. This is because the Arbitration Agreement unambiguously provides for the same scope and breadth of discovery. (*See Graf. Dec. Ex. Nos. 2, 3, 5, 7, 8-10, 12 and 14; para. 6(d)*). And, in any event, Plaintiff's lone filing of the Motion to Certify, albeit no class or collective action is allowed in arbitration, is not enough to show any prejudice. This is even more so when considering Plaintiff only filed two consents to join back when the Motion to Certify was filed and he only recently filed three others. The other expenses are nominally related to scheduling and his taking of a corporate representative deposition. Yet, Plaintiff would have to assume these expenses, or similar expenses, even in arbitration.

Finally, because Plaintiff is attempting to bring a collective action and seek certification, there cannot be a waiver of the right to compel arbitration for other class or collective members even if a waiver is deemed to have occurred (over Sun Steaks' objections), with respect to Plaintiff. *Gregory v. Preferred Fin. Solutions,* 5:11-CV-422 MTT, 2013 WL 6632322 (M.D. Ga. Dec. 17, 2013) (refusing to find a waiver of the right to enforce arbitration against other class members when waiver is found to have occurred against the class representative); *Khadera v. ABM Industr. Inc.*, 2011 WL 7064235 at *4 (W.D. Wash.2011) (holding defendants waived their right to compel arbitration against the class representatives for failure to timely assert that right, but were not faulted for failing to move to compel arbitration against the opt-ins). Likewise, Sun Steaks cannot be cloaked with somehow waiving the right to compel arbitration against any of the consenting parties who have now purportedly opted-in. This is especially true when considering the first two opt-ins did not occur until September 3rd and 4th (D.E. 17 and 18), and the only other opt-in notices were filed on October 31st, November 4th and 10th. (D.E. 34, 35, 36 and 40). Moreover, there was no jurisdiction over any of the other collective or class members who had yet to opt-into this case, so any waiver of arbitration cannot be enforced against those that had yet to opt-in. *See Mora v. Harley-Davidson Credit Corp.*, 2012 WL 1189769 at *15 (E.D. Cal. 2012). For these reasons, there is no waiver that can be implied against Sun Steaks for any of the parties filing the consents to join this case.

## CONCLUSION

The Court should compel arbitration and stay the claims in the Amended Complaint pending resolution in an arbitration forum. The Arbitration Agreement constitutes a valid and enforceable contract binding on both the parties. Moreover, the claims at issue fall squarely within the scope of the Arbitration Agreement. Accordingly, and in light of Plaintiff's and the consenting parties' refusal to submit their claim to arbitration, the Court must stay all

proceedings and compel them to pursue their claims in arbitration and in accordance with the Arbitration Agreements.

## CERTIFICATE OF COMPLIANCE

Counsel for Defendants hereby certifies that she has conferred with counsel of record for Plaintiff and the consenting parties in a good faith effort to resolve the issues raised by the Motion, but has been unable to reach a resolution as counsel objects to the relief sought.

Respectfully submitted,

LITTLER MENDELSON, P.C.
Wells Fargo Center, Suite 2700
333 SE 2nd Ave
Miami, FL 33131
Tel: (305) 400-7500
Fax: (305) 603-2552

By: _s/Sherril M. Colombo_
Sherril M. Colombo
Florida Bar No.: 948799
scolombo@littler.com
*Counsel for Defendants*

<u>**CERTIFICATE OF SERVICE**</u>

**I HEREBY CERTIFY** that on this 12th day of November, 2014, I electronically filed the foregoing document with the Clerk of the Court using CM/ECF. I also certify that the foregoing document is being served this day on all counsel of record or *pro se* parties identified on the attached Service List in a manner specified, either via transmission of Notices of Electronic Filing generated by CM/ECF or in some other authorized manner for those counsel or parties who are not authorized to receive electronically Notices of Electronic Filing.

William John Gadd, Esq.
wjg@mazgadd.com
Law Office of W. John Gadd
2727 Ulmerton Rd., Suite 250
Clearwater, FL 33762
Telephone: 727-524-6300

 *s/Sherril M. Colombo*
Sherril M. Colombo, Esq.
